NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WILLIAM POLLEN,

Plaintiff,

v.

NEAL COMER, et al.

Defendants.

HON. JEROME B. SIMANDLE

Civil No. 05-1656 (JBS)

**OPINION**

APPEARANCES:

William Pollen
#243 4057 Route 9 North
Howell, NJ 07731
Plaintiff pro se

Christopher J. Carey, Esq.
Patrick B. Minter, Esq.
William D. Tully, Jr., Esq.
GRAHAM, CURTIN & SHERIDAN, P.A.
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962-1991
Attorneys for Defendant Neal Comer

**SIMANDLE**, U.S. District Judge:

This case involves an intriguing set of facts centering on a wealthy and twice-convicted doctor and his allegations that, between 1991 and 1999, his attorneys engaged in a conspiracy in which they committed legal malpractice, neglected his business affairs, misappropriated millions of dollars contained in a Liechtenstein bank account, stole a $1.25 million dollar yacht and converted his waterfront property in the Bahamas. These

allegations were made in a February 3, 2005 complaint filed by Plaintiff, William Pollen ("Plaintiff"). Acting pro se, Plaintiff seeks damages stemming from the legal malpractice and conversion claims and seeks the equitable relief of an accounting of all funds that Defendant, Neal Comer ("Defendant") handled on behalf of Plaintiff. Currently before the Court are three motions: (1) Comer's motion for summary judgment [Docket Item No. 47]; (2) Comer's motion to preclude the testimony of Plaintiff's expert relating to Plaintiff's legal malpractice claim [Docket Item No. 72]; and (3) Plaintiff's motion for default judgment against Comer's co-defendant, Denys Cole.

For the following reasons, Comer's motion for summary judgment will be granted. With respect to Plaintiff's malpractice claim, many of Plaintiff's alleged acts of malpractice took place in the early 1990's and Plaintiff was aware of Comer's alleged negligence in the mid-1990's. These claims then are barred by New Jersey's six-year statute of limitations on actions for legal malpractice. In addition, Plaintiff has failed to provide any evidence that Comer's other alleged acts of malpractice were the proximate cause of the harms Plaintiff suffered. With regard to Plaintiff's claim of conversion of his yacht, this claim too is barred by New Jersey's six-year statute of limitation for claims of the tort of conversion. Finally, Plaintiff's claim for conversion of his

Bahamian real estate fails because Plaintiff fails to present any evidence either that (1) he owned the property or (2) Comer was involved in its conversion.

The Court will also dismiss Comer's motion to preclude the testimony of Plaintiff's expert as moot. Plaintiff introduced the testimony of his expert to address only the issue of Plaintiff's claim of legal malpractice. Because this Court granted summary judgment in favor of Comer on this claim based on other grounds, the Court need not decide whether Plaintiff's expert's testimony should be precluded.

Finally, the Court will deny Plaintiff's motion for default judgment against Comer's co-defendant Denys Cole. Based on the confusing nature of Plaintiff's certification in support of his motion for default judgment and because the Court deems it "necessary . . . to determine the amount of damages [and] to make an investigation of any other matter," the Court shall conduct a hearing so that Plaintiff is afforded the opportunity to be heard on these issues.

## I. BACKGROUND

### A. Facts

Despite the fact that this case is nearly two-and-a-half years old and the discovery period closed in July of 2006, the facts of this case are far from fully developed. However, the Court does have sufficient facts to adjudicate the present

motion. Because the Court has not been provided with a complete picture of the factual background in this case, the Court will only discuss the facts relevant to the Comer's pending summary judgment motion and motion to preclude Plaintiff's expert's testimony.

Plaintiff is a medical doctor who ran a successful orthopedics practice in New Jersey. Plaintiff and Comer have had a professional relationship dating back to approximately 1978. Beginning then and continuing until 1999, Comer and a co-defendant in this case, David Young, Esq., served as Plaintiff's attorneys, representing him in numerous matters throughout this twenty-two year period. (Complaint ¶ 2.) The events at issue in this case began in approximately 1991, when Plaintiff was charged with tax evasion and other charges. (Id. ¶ 3.) The core of Plaintiff's claims are that Comer and Young were negligent in their representation of Plaintiff in Comer's criminal matters and, either through a conspiracy to defraud Plaintiff or through the negligence of Comer and Young, Plaintiff lost nearly all of his personal assets.

According to the Complaint, Plaintiff's troubles began in the late 1980's and early 1990's when he was charged with tax evasion. In connection with the charge, the Internal Revenue Service and the United States Attorney's Office seized certain of Plaintiff's assets and turned them over to a court-appointed

receiver. (Id.) The assets were liquidated and the proceeds applied for the benefit of Plaintiff, for payment of back taxes, penalties, interest and fines. (Id.)

**1. First Count - Legal Malpractice**

Plaintiff's legal malpractice claim centers of Comer's alleged negligence in handling (1) Plaintiff's sentencing for tax evasion in 1991 and (2) Plaintiff's attempts to remain out of trouble with the I.R.S. in the late 1990's. Plaintiff claims that the I.R.S. incorrectly calculated the amount of taxes Plaintiff owed and that Comer negligently failed to challenge the amounts calculated by the Government at Plaintiff's 1991 sentencing. Plaintiff claims that "[p]artly as a result of the larger amounts claimed due from the Plaintiff, [Plaintiff] was sentenced to terms of incarceration for longer periods than if the amounts allegedly due had been properly calculated and established." (Id.) Plaintiff also claims that Comer was negligent in several other aspects of his representation of Plaintiff, specifically alleging that:

1. Comer failed to ascertain the amount collected by the Government from the sale of Plaintiff's seized assets; (Compl. ¶4(a))

2. Comer failed to obtain the basis and and explanation of the various "codes" used by the Government so that the Government's calculations of the taxes owed could be examined and possibly countered; (Id. ¶4(b))

3. Comer failed to apply to the Court to compel the court-appointed receiver to pay to Plaintiff his liquidated assets "in a proper manner so as to minimize or

eliminate the imposition of additional taxes;" (Id. ¶4(c))

4. Comer failed to use Plaintiff's assets that had not been seized by the Government (that Comer had access to under a power of attorney) to pay taxes, interest and penalties and/or fines imposed on Plaintiff and that this failure resulted in "the further incarceration of the Plaintiff for alleged willful refusal to pay a fine;" (Id. ¶4(d))

5. Comer failed to inform the Plaintiff that a court-appointed receiver of Plaintiff's assets was not going to file tax returns for Plaintiff for the Plaintiff's income produced by liquidation of Plaintiff's assets resulting in Plaintiff's failure to file tax returns and his further incarceration; (Id. ¶4(e))

6. At the time Comer represented Plaintiff, Comer also represented David Young "whose interests were in conflict with those of Plaintiff" in violation of certain "Rules of Ethics and Rules of Procedure;" (Id. ¶4(f)) and

7. Comer "[i]n other ways . . . negligently failed, or willfully refused to carry out his responsibilities as attorney and legal representative of Plaintiff." (Id. ¶4(g))

In Defendant's Statement of Undisputed Material Facts ("Def.'s SUMF"), Comer states that Plaintiff became aware of certain of these alleged acts of malpractice in the mid-1990's. (Def.'s SUMF ¶ 4.)

**2. Third Count - Conversion of Real Property**

In the Third Count of the Complaint, Plaintiff alleges willful conversion of property Plaintiff owned on the island of Grand Bahama in the British West Indies. Specifically, Plaintiff alleges that Comer induced him to execute a power of attorney that allowed Comer to sell the property (without Plaintiff's

knowledge and against his specific instructions) and then failed to turn the proceeds of the sale over to Plaintiff.

Aside from these allegations, there is little in the summary judgment record evidencing Plaintiff's ownership of this property. Plaintiff testified that he had no deed, title or similar document evidencing his ownership of the property. (Pollen Dep. Tr. at 398-99, 420.) Attached to Plaintiff's Certification, however, are letters from Plaintiff's former attorneys summarizing the chain of title of the property, showing that from 1970 through 1986 the Bahamian property was owned by an entity named Blue Basin Enterprises Limited and that this entity transferred ownership of the property to an entity named The Private Trust Corp. Limited in August of 1986. (Pl.'s Certification ¶¶ 46-47, Ex. 12.) Philip Pollen (Plaintiff's father according to Plaintiff's Certification) served as vice-president of Blue Basin Enterprises Limited at the time of the 1986 transaction.

**3. Fourth Count - Conversion of Sailboat**

In the Fourth Count of the Complaint, Plaintiff alleges that Comer and co-defendant Young assisted Plaintiff in forming a corporation named "Sea Venture" to hold title to a fifty-two foot sailboat valued at $1.25 million. (Compl. Count IV, ¶¶ 3-4.)_ Plaintiff claims that he was fraudulently induced by Comer to sign a Power of Attorney that enabled Comer to transfer ownership

of the boat to a corporation named Becker Trust. (Id.) Plaintiff further alleges that despite his specific and repeated instructions not to sell or otherwise dispose of the boat, one or all of the defendants sold the boat and never provided the Plaintiff with the sales proceeds. (Id.)

**B. Procedural History**

This case has had a contentious history. Plaintiff filed this action in Superior Court of the State of New Jersey, Camden Count, Law Division on February 3, 2005. On March 23, 2005, Comer removed this action to this Court based on 28 U.S.C. §§ 1332, 1441 and 1446. [Docket Item No. 1.] The Complaint, which is not a model of clarity, contains five counts. First, Plaintiff brings a claim for legal malpractice arising from Comer's representation of Plaintiff in several aspects of Plaintiff's criminal case beginning in 1991 and continuing through 1999. (Compl., First Count ¶¶ 1-4.) In the second count, Plaintiff seeks the equitable relief of an accounting of "all funds or assets given, received or transferred to [Comer] . . . which belong to the Plaintiff, or were to be used for the benefit or purposes of the Plaintiff, or his family, at any time from [Comer's] initial representation of Plaintiff, to the present day." (Id., Second Count ¶¶ 1-2.) In the third and fourth counts, Plaintiff brings claims for the tort of conversion related to (1) certain real estate in the Bahamas allegedly owned

by Plaintiff (Third Count) and (2) a sailboat also allegedly owned by Plaintiff (Fourth Count). (Id., Third Count ¶¶ 1-3; Fourth Count ¶¶ 1-5.) Finally, Plaintiff brings a second claim for an accounting, this time directed at Comer and two co-defendants (David Young and Denys Cole) for "all assets of the Plaintiff's received by them at any time, and detailing the disposition of those assets." (Id., Fifth Count ¶¶ 1-2.)[1]

On April 28, 2006, U.S. Magistrate Judge Ann Marie Donio granted Plaintiff's motion for an extension of time to complete discovery, ordering that fact discovery be concluded by July 28, 2006. [Docket Item No. 30, 32.] In compliance with Judge Donio's scheduling order of the same date, Comer filed his motion for summary judgment on October 10, 2006.[2] [Docket Item No. 47.] The Court gave Plaintiff a number of extensions to file his brief in opposition, ultimately allowing him to file opposition to Comer's motion on November 29, 2006. [Docket Item No. 57.]

---

[1] Based on his brief in support of his motion for summary judgment, the Court understands that Comer views Plaintiff's claims simply as a cause of action for legal malpractice. Specifically, Comer makes no mention of Plaintiff's claims for conversion in the Complaint. This Court however, will construe Plaintiff's (who is acting pro se) Complaint liberally and interpret the Complaint as seeking relief for the five causes of action described in Section I.B, supra.

[2] As discussed in more detail in footnote 9, infra, Comer's motion for summary judgment addresses only the First, Third and Fourth Counts of the Complaint. Comer did not move for summary judgment as to the Second and Fifth Counts (claims for the equitable relief of an accounting).

On December 15, 2006, Judge Donio granted in part and denied in part a motion for a protective order filed by Comer. [Docket Item No. 64.] In her ruling, Judge Donio ordered that Plaintiff be allowed to depose Comer for five hours and that deposition take place by January 12, 2007. [Docket Item No. 63, 64.] Judge Donio also extending the pretrial factual discovery period with respect to completing Comer's deposition. Comer was deposed on January 11, 2007 and following the deposition, Plaintiff filed a supplemental submission in opposition to Comer's motion on January 19, 2007. Included in Plaintiff's supplemental submission was the expert report of Anthony P. Ambrosio.

On January 26, 2007, Comer filed a reply to Plaintiff's opposition and supplemental submission. Also on January 26, 2007, Comer filed a motion to preclude Plaintiff's expert's testimony. [Docket Item No. 72.] Plaintiff filed opposition to Comer's motion on February 7, 2007 to which Comer replied on February 23, 2007. [Docket Item No. 73, 75.]

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law."[3] Fed. R. Civ. P. 56(c). In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[4] Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

**B. Preliminary Matters**

**1. Opposition based on Rule 56(f), Fed. R. Civ. P.**

In his brief in opposition to Comer's motion and in his Certification in Opposition to Notice of Motion for Summary

---

[3] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. See id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. See id.

[4] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. Gepner, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

Judgment ("Plaintiff's Certification"), Plaintiff argues that Comer's motion is "premature due to the refusal of Defendant Comer to finish his deposition." (Pl.'s Certification ¶ 2) The Court construes the issues raised in Plaintiff's Certification and brief as an opposition to Comer's motion based on Rule 56(f), Fed. R. Civ. P.[5]

The Court need not address Plaintiff's Rule 56(f) opposition because the Court considers this objection obviated by the fact that Plaintiff completed the deposition of Comer on January 11, 2007 and pretrial fact discovery was extended until after the deposition was complete. Thus, any of Plaintiff's arguments made under Rule 56(f) are now moot. Plaintiff concedes as much in his January 19, 2007 supplemental submission in which he states that he "deposed [Comer] as scheduled" and that he would not be submitting a new brief that would include evidence obtained from Comer's January, 2007 deposition because such a brief would "be mostly a repetition of what was originally submitted."

[5] Rule 56(f) states that a party may oppose summary judgment by submitting an affidavit that sets forth good reasons why the party cannot submit an affidavit justifying the party's position in opposition to the motion. Fed. R. Civ. P. 56(f); see Robert E. Bartkus, N.J. Federal Civil Procedure ¶ 8-12:4 at 212-13 (1999). Upon review of a Rule 56(f) affidavit, the court may refuse to entertain the pending summary judgment motion or may order a continuance to permit additional discovery.

**2. Consideration of Plaintiff's Certification**

In his reply brief, Comer argues that the Court should not consider Plaintiff's Certification because rather than responding to Plaintiff's SUMF, Plaintiff submitted "a self-serving certification which is rife with legal arguments, unsubstantiated facts, bold allegations and pure conjecture." (Def.'s Reply Br. at 5.) In opposing summary judgment, a non-movant may not "rest upon mere allegations, general denials, or . . . vague statements." Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991). Indeed, Rule 56(e), Fed. R. Civ. P. states, in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
>
> * * * * *
>
> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e); Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 282 (3d Cir. 1988). It is not enough for a non-movant to "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Lombardi v. Cosgrove, 7 F. Supp. 2d 481, 492 (D.N.J. 1997). An affidavit offered in opposition to

a motion for summary judgment that fails to establish a proper evidentiary foundation for the facts stated within it may not be considered, Williams v. Borough of West Chester, 891 F.2d 458, 471 (3d Cir. 1989), and when a non-movant's affidavit contradicts earlier deposition testimony, "the district court may disregard the affidavit in determining whether a genuine issue of material fact exists." Lombardi, 7 F. Supp. 2d at 492 (quoting Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991)).

There are a number of reasons why this Court should not consider Plaintiff's Certification in deciding Comer's motion. First, Plaintiff has failed to meet the basic requirements of an affidavit filed in opposition to a motion for summary judgment established in Rule 56(e). For example, Plaintiff's Certification lacks any indicia that "show[s] affirmatively that [Plaintiff] is competent to testify to the matters stated" in the Certification, Fed. R. Civ. P. 56(e), and is replete with facts of questionable admissibility (e.g., conversations Plaintiff had with his accountant (Cert. ¶ 17) are hearsay) and that irrelevant to the case (e.g., facts regarding an investigation in Liechtenstein into Plaintiff's lost money (Cert. ¶ 17-18)). Second, Plaintiff mixes legal arguments into the Certification and includes numerous speculative and conjectural statements that are inappropriate for the Court's consideration in opposition to this motion for summary judgment. For example, the Certification

contains accusations that, after Plaintiff was incarcerated in 1999, "the conspirators had 11 months more to tighten the grip of my assets," (Cert. ¶ 23), and that Comer's attorneys in this case "destroy or just withhold evidence so that the very fact that written evidence is scarce, is evidence in itself." (Cert. ¶ 33.) Plaintiff's Certification also contains numerous rhetorical questions (e.g., "[w]as this attempted murder by deliberate imprisonment inflicted on a person of advanced age and failing health? I think so." (Cert. ¶ 23.)) that are inappropriate in an affidavit filed in opposition to summary judgment.

Despite its numerous problems, the Court will not completely disregard Plaintiff's Certification. Rather, the Court will closely examine each instance where Plaintiff claims that the Certification creates a genuine issue of material fact and consider Plaintiff's Certification only where the Court concludes that the Certification complies with Rule 56(e). To this end, the Court will examine whether the facts at issue in the Certification (1) are actually facts rather than mere allegations or speculative statements, (2) constitute admissible evidence, and (3) are based on Plaintiff's personal knowledge.

**C. First Count - Legal Malpractice**

In support of his motion for summary judgment on Plaintiff's claim of legal malpractice, Comer makes three arguments. First, Comer argues that Plaintiff has failed to present any evidence of

the amount of his damages due to Comer's alleged malpractice, a required element of a legal malpractice claim. Instead, according to Comer, because Plaintiff has only made "numerous unfounded assertions that [Comer's] conduct caused him damages," (Def.'s Br. at 12) and presented no credible evidence to support his legal malpractice claim, Plaintiff's claim is unsustainable as a matter of law. (Id. at 13.) Second, Comer argues that several of Plaintiff's malpractice allegations are barred by New Jersey's six-year statute of limitations for legal malpractice claims. (Id. at 16-21.) Third, Comer argues that the Court should grant Comer's motion because Plaintiff has not and cannot prove essential elements of a legal malpractice claim.[6] (Id. at 22-24.)

In his opposition brief, Plaintiff argues that summary judgment should be denied because genuine issues of material fact exist. (Pl.'s Amended Opp. Br. at 3-7.) Plaintiff however, with one exception noted below, fails to identify for the Court the specific facts that are in dispute. Plaintiff's brief does assert that Plaintiff suffered certain specific damages as a

---

[6] Comer also argues that summary judgment is appropriate because Plaintiff has failed to produce an expert report in compliance with the Court's order. According to Comer, expert testimony is required to maintain a claim of legal malpractice and that the lack of expert testimony is fatal to Plaintiff's malpractice claim. Plaintiff has produced, albeit untimely, an expert's report of Anthony P. Ambrosio, Esq. Whether this Court should preclude Mr. Ambrosio's report or not is the subject of a motion by Comer that will be addressed in Section IV, infra.

result of Comer's malpractice, stating that Comer's alleged negligence in 1999 (i.e., Comer's failure to pay Plaintiff's $75,000 fine as instructed by Plaintiff) resulted in his incarceration from June 1999 to May 2000.[7]

Under New Jersey law, an attorney is obligated to exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise. See St. Pius X House of Retreats v. Diocese of Camden, 88 N.J. 571, 588 (1982). In order to establish a claim of legal malpractice, a plaintiff must demonstrate:

> (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) that the attorney breached the duty owed; (3) that the breach was the proximate cause of any damages sustained; and (4) that actual damages were incurred.

Sommers v. McKinney, 287 N.J. Super. 1, 9-10 (App. Div. 1996); see also Albright v. Burns, 206 N.J. Super. 625, 632 (App. Div. 1986). The plaintiff-client has the burden of proving, by "a preponderance of competent credible evidence[,] that injuries

---

[7] In his Amended Brief in Opposition, Plaintiff also argues that he is entitled to punitive damages. Because Plaintiff did not include a claim for punitive damages in the Complaint, the Court will disregard this aspect of Plaintiff's brief. In addition, throughout his brief in opposition and Certification, Plaintiff includes other claims not mentioned in the Complaint (i.e., Comer failed to pay rent on a number of storage units that resulted in Plaintiff's personal property being discarded and Comer made unauthorized withdrawals from Comer's trust account to pay for Comer's own legal fees). Because Plaintiff did not properly include these claims in the Complaint, the Court will not address these additional claims.

were suffered as a proximate consequence of the attorney's breach of duty." Id. (citing Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 342, (1980)). A plaintiff-client must present more than "mere conjecture, surmise or suspicion" to satisfy his or her burden of proof. Id. (citing 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488 (App. Div. 1994)).

Legal malpractice claims are governed by the six-year statute of limitations established in N.J. Stat. Ann. 2A:14-1. See Grunwald v. Bronkesh, 131 N.J. 483, 487 (1993); Lanziano v. Cocoziello, 304 N.J. Super. 616, 621-22 (App. Div. 1997). This six-year statute of limitation period begins to run when a plaintiff first suffers damages and then discovers -- or through the use of reasonable diligence should have discovered -- the facts essential to their malpractice claim. See Lanziano, 304 N.J. Super. at 621.

**1. Several of Plaintiff's claims of malpractice are barred by New Jersey's statute of limitation**

In the Complaint, Plaintiff alleges eight separate instances of Comer's negligence in representing Plaintiff. (Compl. First Count, ¶¶ 3, 4(a)-(g).) The Court will grant Comer's motion for summary judgment as to four of these instances, finding that a claim of malpractice relating to any of these four instances is barred by New Jersey's six-year statute of limitations.

**a. Plaintiff's 1991 sentencing**

In Paragraphs 3 and 4(a), Plaintiff claims that, during Plaintiff's 1991 sentencing, Comer did not appropriately challenge the amount Plaintiff owed in back taxes or ascertain the amounts collected by the Government from the sale of Plaintiff's seized assets. (Compl. First Count, ¶¶ 3, 4(a)). According to Plaintiff, Comer's successful challenge of the amount of back taxes owed would have resulted in a lower figure of taxes owed and corresponded to a reduced criminal sentence. In his deposition, however, Plaintiff admitted that his appellate counsel (Blank, Rome & Singer) informed him when they filed an appellate brief on his behalf that Comer should have challenged the amount of taxes Plaintiff owed at Plaintiff's sentencing. Certainly, Plaintiff was informed of Comer's alleged negligence some time in 1992 or 1993. Accordingly, because Plaintiff was made aware of Comer's alleged negligence prior to February 3, 1999, Plaintiff's claim of malpractice based on Comer's 1991 failures are now barred by the six-year statute of limitations.

**b. Failure to apply certain seized assets to Plaintiff's back taxes**

In Paragraph 4(c), Plaintiff claims that Comer was negligent when he failed to compel an appointed receiver to pay certain of Plaintiff's liquidated assets to the Government "to minimize or eliminate the imposition of additional taxes." (Compl., First Count ¶ 4(c)). Specifically, Plaintiff testified that Comer

failed to have the Government credit roughly $275,000 that was seized by the Government toward the payment of Plaintiff's back taxes. (Pollen Dep. Tr. at 119.) Plaintiff, however, admitted in his deposition that he discovered that the Government had not credited the $275,000 toward his back taxes in either 1996 or 1997. (Id. at 121-22.) Thus, Plaintiff was aware of Comer's alleged negligence in failing to have this amount credited as late as 1997, two-years before the applicable statute of limitations date of February 3, 1999. Because he was aware of the alleged malpractice prior to this date, Plaintiff's malpractice claim with respect to application of these funds to his back taxes is time-barred.

**c. Failure to apply certain assets that were not seized to Plaintiff's back taxes**

In Paragraph 4(d) of the Complaint, Plaintiff claims that Comer was negligent when he failed to use certain of Plaintiff's assets not seized by the Government to pay Plaintiff's back taxes, interest and penalties. (Compl., First Count ¶ 4(d)). According to Plaintiff, Comer had access to certain of Plaintiff's funds in a Liechtenstein bank account and that Plaintiff had instructed Comer to use these funds to pay Plaintiff's back taxes and penalties. The Complaint alleges Comer failed to do so, resulting in Plaintiff being incarcerated. In his deposition, however, Plaintiff admitted that he was aware that Comer failed to access these funds and provide it to the

Government in satisfaction of Plaintiff's outstanding tax liability. Consequently, having learned of Comer's alleged negligence long before February 3, 1999, Plaintiff's claim under Paragraph 4(d) is time-barred.

**2. Plaintiff has failed to show that Comer's alleged malpractice was the proximate cause of Plaintiff's damages**

The Court will grant summary judgment as to three additional instances of alleged legal malpractice -- contained in the Complaint, First Count ¶ 4 (b), (e) and (g) -- because Plaintiff has presented no evidence that Comer's alleged negligent acts were the proximate cause of Plaintiff's damages. In Paragraph 4(b), Plaintiff claims that Comer was negligent when he failed to obtain the basis and explanation of various "codes" used by the Government in calculating Plaintiff's taxes. (Compl., First Count ¶ 4(b)). According to Plaintiff, obtaining an explanation of these codes would have enabled Comer to challenge the Government's computation of Plaintiff's taxes and such a challenge may have resulted in Plaintiff receiving a reduced sentence. Plaintiff also alleges that Comer's failure to inform the Plaintiff that a court-appointed receiver was not going to file tax returns for Plaintiff resulted in Plaintiff's failure to file taxes and resulted in his further incarceration. (Id. ¶ 4(e)). In addition, in Paragraph 4(g), Plaintiff claims that "[i]n other ways . . . [Comer] negligently failed, or willfully

refused to carry out his responsibilities as attorney." (Id. ¶ 4(g)).

In his Answer and motion for summary judgment, Comer denies these allegations and Plaintiff has failed to present any evidence that Comer's failure to (1) obtain an explanation of codes used by the Government to calculate Plaintiff's back taxes, (2) inform Plaintiff that the court-appointed receiver would not be filing Plaintiff's tax returns, or (3) carry out other non-specific "responsibilities" resulted in Plaintiff being incarcerated or incarcerated longer than if Plaintiff had taken these actions. As discussed supra, in a legal malpractice claim it is the plaintiff's burden to prove, by a preponderance of "competent credible evidence" that injuries were suffered as a proximate consequence of the attorney's breach of duty. Lieberman, 84 N.J. at 342. Plaintiff has failed to do so with respect to these remaining malpractice claims. At best, Plaintiff, through his Certification, has presented conjecture and speculation as to how Comer's actions (or inactions) caused his claimed damages. Evidence that is made up of "conjecture, surmise or suspicion" fails to satisfy Plaintiff's burden of proof. See Lemoine Ave. Corp., 272 N.J. Super. at 488. Thus, the Court will grant Comer's motion for summary judgment as to Plaintiff's malpractice claims under Compl., First Count ¶¶ 4(b), (e), and (g).

**3. Plaintiff's cause of action for Comer's violation of the Rules of Professional Conduct**

In Paragraph 4(f), Plaintiff brings a claim of malpractice based on Comer's alleged representation of both Plaintiff and Comer's co-defendant David Young. (Compl., First Count ¶ 4(f)). Citing Comer's actions as a violation of the "Rules of Ethics and Rules of Procedure," Plaintiff alleges that Comer had a conflict of interest in representing both Plaintiff and David Young and that Plaintiff was damaged by Comer's dual representation. In his summary judgment motion, Comer argues that Plaintiff cannot maintain this cause of action because a violation of the rules of professional conduct does not give rise to a claim for legal malpractice.

Comer is correct. Under New Jersey law, a violation of the Rules of Professional Conduct "do[es] not per se give rise to a cause of action in tort." Sommers v. McKinney, 287 N.J. Super. 1, 13 (App. Div. 1996); Baxt v. Liloia, 155 N.J. 190, 197-98 (1998). Indeed, the New Jersey Supreme Court in Baxt cited approvingly to the introductory language to the Model Rules of Professional Conduct:

> Violation of a Rule [of Professional Conduct] should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. . . . Accordingly, nothing in the Rules should be deemed to augment any substantive

> legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

Baxt, 155 N.J. at 197-98 (quoting Model Rules of Professional Conduct, Scope (1992)). However, "because the ethical standards set the minimum level of competency to be displayed for all attorneys, violation of the rules can be considered evidence of malpractice." Sommers, 287 N.J. Super. at 13 (citing Albright v. Burns, 206 N.J. Super. 625, 634 (App. Div. 1986)). Even in the instance when an attorney violates a rule of professional conduct, and thus there is evidence of malpractice, the plaintiff bringing a malpractice claim must still prove that the attorney's violation rises to the level of legal malpractice and was the proximate cause of his or her injury. Albright, 206 N.J. Super. at 635.

Here, the Court will grant Comer's motion for summary judgment as to Plaintiff's claim related to Comer's alleged dual representation of Plaintiff and Young. Rather than using Comer's alleged violation of the rules of professional conduct as evidence that Comer breached the standard of care he owed Plaintiff as Plaintiff's attorney (which would be permissible), Plaintiff attempts to bring a cause of action for violation of the rules themselves (which is impermissible under Baxt and Sommers). Thus, Plaintiff's claim fails under New Jersey law.

Even if Plaintiff intended to use Comer's alleged ethics violation as evidence of malpractice, Plaintiff would still be

faced with the hurdle of proving causation. Plaintiff has presented no evidence or argument that Comer's alleged dual-representation and conflict of interest caused him to suffer any damage (either through the loss of money or his freedom due to incarceration).[8] As the party opposing summary judgment, and who will have the burden of proof on this issue at trial, Plaintiff had the obligation to come forward now with admissible evidence of causation and he has not done so. Consequently, the Court will grant Comer's motion for summary judgment on this claim as well.

**D. Third Count - Conversion of Real Estate**

In the Third Count of the Complaint, Plaintiff alleges willful conversion of property Plaintiff owned in the Bahamas. Specifically, Plaintiff alleges that Comer induced him to execute a power of attorney that allowed Comer to sell the property (without Plaintiff's knowledge and against his specific instructions) and then failed to turn over the proceeds of the sale to Plaintiff.

---

[8] Indeed, Plaintiff has failed to state a theory about how Plaintiff's representation of both Plaintiff and Young was a conflict of interest, let alone how the conflict of interest caused Plaintiff damage. The Court cannot presume that a conflict of interest arose in violation of the Rules of Professional Conduct, much less that this conflict is the equivalent of professional malpractice that caused harm to Plaintiff, based upon mere allegations unsupported by factual evidence and citation to the operative rules, which is Plaintiff's obligation.

Conversion is the intentional exercise of dominion or control over personal property that seriously interferes with the right of another to control it. See Mueller v. Tech. Devices Corp., 8 N.J. 201, 207 (1951); see also Commercial Ins. Co. v. Apgar, 111 N.J. Super. 108, 114, 267 A.2d 559 (Law Div. 1970); Restatement (Second) of Torts § 222A(1) (2007). "The essence of a conversion claim is that one party exercises the right of ownership over property belonging to another without that person's permission." Boccone v. Levinson, No. 04-3871, 2006 U.S. Dist. LEXIS 94475, *19-20 (D.N.J. Dec. 26, 2006). To prove a claim for conversion, a plaintiff must prove "(1) that the alleged offender assumed and exercised the right of ownership over the party's goods or chattels without permission, and (2) excluded the owner from exercising dominion over them." Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F. Supp. 2d 543, 576 (D.N.J.) aff'd, 342 F.3d 191 (3d Cir. 2003)(citing Barco Auto Leasing Corp. v. Holt, 228 N.J. Super. 77, 83 (App. Div. 1988)); Woodside v. Adams, 40 N.J.L. 417 (Sup. Ct. 1878).

Comer argues that Plaintiff has failed to present any evidence demonstrating the two essential elements of a conversion claim: that Plaintiff owned the land in question and that Comer had any role in its conversion. The Court agrees. First, neither in Plaintiff's amended brief in opposition nor in his Certification does Plaintiff present any evidence that he owned

the Bahamian property. Plaintiff has produced no deed, title, or like document evidencing his ownership; and at his deposition, Plaintiff admitted that he had no such documentation. (Pollen Dep. Tr. at 398-99, 420.) Although Plaintiff's Certification states that he owns the land and presents documents purporting to evidence his ownership, neither the Certification nor the documents attached as exhibits produce a genuine issue about Plaintiff's ownership. (Pl.'s Certification ¶¶ 46-47, Ex. 12.) The exhibits attached to Plaintiff's Certification are merely letters from attorneys Plaintiff engaged to investigate the ownership of the property. (Id.) These documents state that from 1970 through 1986 the Bahamian property was owned by an entity named Blue Basin Enterprises Limited and that this entity transferred ownership of the property to an entity named The Private Trust Corp. Limited in August of 1986. (Id.) Although the documents list Philip Pollen (Plaintiff's father) as a vice-president of Blue Basin Enterprises Limited, Plaintiff presents no evidence that he had or has any ownership interest in either entity. The letters, further, are inadmissible hearsay, no competent evidence to prove Plaintiff's interest in the property.

Second, Plaintiff fails to present any credible evidence that Comer played a role in the transfer of the Bahamian property from Blue Basin to The Private Trust Corp. In fact, when asked at his deposition whether he had "anything in writing, any

document of any kind, or other evidence which would tend to prove [Comer] had any involvement in the scheme to sell, without [Plaintiff's] permission, [the] property," Plaintiff responded that he did not. Without any competent evidence to support Plaintiff's claim of conversion of the Bahamian property, Plaintiff's claim fails as a matter of law. Consequently, the Court will grant Comer's motion for summary judgment as to this claim.

**E. Fourth Count - Conversion of Sailboat**

In the Fourth Count of the Complaint, Plaintiff brings a claim of conversion of Plaintiff's sailboat against Comer, Cole and Young. (Compl., Fourth Count ¶¶ 1-5.) In short, Plaintiff alleges that he instructed Plaintiff not to sell his sailboat. Plaintiff alleges that Comer and Young, however, fraudulently induced Plaintiff to sign a power of attorney authorizing them to sell the boat, changed the boat's name from "Une Femme Tres Serieuse" to "Kivu," then transferred ownership of the boat to a corporation named Becker Trust. (Id. ¶ 4.) According to Comer, Becker Trust also holds Comer's personal assets. (Id.) Comer argues that Plaintiff's claim for conversion is time-barred by New Jersey's six-year statute of limitations because Plaintiff knew that the boat was allegedly stolen for more than six years before he filed the Complaint.

As mentioned supra, the elements of a claim for conversion are (1) that the alleged offender assumed and exercised the right of ownership over the party's chattels without permission, and (2) excluded the owner from exercising dominion over them, see Video Pipeline, Inc., 275 F. Supp. 2d at 576, and under New Jersey law, conversion of personal property is subject to a six-year statute of limitations. See N.J. Stat. Ann. 2A:14-1. The Court will grant Comer's motion for summary judgment with respect to Plaintiff's claim of conversion because Plaintiff's claims are barred due to the six-year period of limitations. In his deposition, Plaintiff testified that he learned that he no longer owned the boat in 1996 or 1997. (Pl.'s Dep. Tr. at 376, 432.) Specifically, Plaintiff's deposition transcript states:

> Q: So, the first time you learned that you no longer owned the boat, despite your specific instructions to Mr. Comer and the other not to sell it, was 1996.
>
> A: Yes.

(Pl.'s Dep. Tr. at 376.) Plaintiff reiterates that he learned that ownership of the boat had been transferred to another entity despite his specific instructions to the contrary by 1997:

> Q: But by 1997, you knew the boat had been sold without your permission?
>
> A: Yes.

(Pl.'s Dep. Tr. 432.) Because Plaintiff was on notice of Comer's alleged conversion by 1997, Plaintiff's claim against Comer for

conversion of the boat are time-barred by New Jersey's six-year statute of limitation for conversion actions.[9]

**III. DEFENDANT'S MOTION TO PRECLUDE EXPERT'S TESTIMONY**

On January 26, 2007, Comer filed a motion to preclude the expert testimony of Anthony P. Ambrosio, Esq. that was submitted by Plaintiff. [Docket Item No. 72.] Plaintiff submitted Mr. Ambrosio's testimony in support of his legal malpractice claims against Comer and Young and in opposition to Comer's motion for summary judgment. (Def.'s Mot. to Preclude, Ex. C.) Because the Court has granted summary judgment in favor of Comer with respect

---

[9] The Court notes that Plaintiff also brings two claims seeking the equitable relief of an accounting. (Second Count and Fifth Count of the Complaint). Specifically, in the Second Count, Plaintiff seeks an accounting of "all funds or assets given , received or transferred to [Comer] . . . which belong to the Plaintiff, or were to be used for the benefit or purposes of the Plaintiff, or his family, at any time from [Comer's] initial representation of Plaintiff, to the present day." (Id., Second Count ¶¶ 1-2.) In the Fifth Count, Plaintiff seeks an accounting of "all assets of the Plaintiff's received by [Comer, David Young and Denys Cole] at any time, and detailing the disposition of those assets." (Id., Fifth Count ¶¶ 1-2.)

Comer has not moved for summary judgment as to either claim for an accounting nor has his briefing papers mentioned either these claims. Because New Jersey law recognizes a cause of action in equity for an accounting, see Messina v. Nat'l Store Co., 54 A.2d 212 (N.J. Ch. 1947); Kenilworth v. Graceland Mem'l Park Ass'n, 199 A. 716 (N.J. Ch. 1938), these two claims remain viable claims in this case. The Court will give Comer an opportunity to file a second motion for summary judgment as to these two claim if he chooses. To this end, Comer may file and serve any motion for summary judgment as to the Second and Fifth claim of the Complaint within fourteen (14) days of the date of this Opinion and Order. Any opposition to Comer's second motion for summary judgment or any reply to Plaintiff's opposition, shall be filed and served in accordance with L. Civ. R. 7.1(c).

to Plaintiff's malpractice claim, (see Section II.B, supra), the Court need not consider Mr. Ambrosio's testimony, which relates solely to the issue of Comer's and Young's alleged negligence in non-payment of the fine and conversion of the sailboat, which claims were dismissed above on other grounds; Ambrosio's report does not mention the alleged conflict of interest nor express any expert opinion on it. Consequently, the Court will dismiss Comer's motion to preclude Plaintiff's expert's testimony as moot.

## IV. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

On May 22, 2006, Plaintiff requested that the Clerk enter default against defendant Denys Cole under Fed. R. Civ. P. 55(a). [Docket Item No. 37.] On August 22, 2006, the Clerk entered the requested default. Plaintiff now moves for default judgment as to defendant Cole. [Docket Item No. 70.]

In support of his motion, Plaintiff includes a certification in which he certifies that (1) Cole was served with a summons and complaint in St. Helier, Channel Islands, United Kingdom (and attaches an affidavit of service of a Virginia Deller of the law firm Crills Advocates),[10] (2) Cole failed to respond to services,

---

[10] Service in a foreign country must be effected pursuant to Rule 4(f), Fed. R. Civ. P. Specifically, Rule 4(f) states that service in a foreign country may be effected by "any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Aborad of Judicial and Extrajudicial Documents," Fed. R. Civ. P. 4(f)(1); Bartkus, N.J. Federal Civil Procedure, §

and (3) that Plaintiff seeks damages of $15,000,000. Also included in Plaintiff's motion papers is a document titled "Damage Claim" in which Plaintiff details Coles' role in converting (1) $8,408,800 worth of Plaintiff's gold and currency from various foreign accounts and (2) Plaintiff's boat (named "Une Femme Tres Serieuse") which Plaintiff estimates at $3,340,000. Plaintiff also seeks $3,251,200 in interest on $11,748,800 in damages.

Where, as in this case, default has previously been entered against the defendant, the plaintiff has the burden, under Rule

---

2-2:3.2d, at 43-44 (1999). Accordingly, service abroad on a foreign individual is governed by the Hague Convention. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988). The United Kingdom is a signatory to the Hague Convention and the coverage of the convention extends to the Bailiwick of Jersey, a British Crown dependency. See Hague Convention on the Service Abroad of Judicial and Extra-Judicial documents in Civil and Commercial Matters, www.usmarshals.gov/process/hague_service.htm (last visited Jun. 27, 2007). A number of courts have held that personal service upon an individual by an English solicitor in the United Kingdom or a territory is proper services under Article 10(b) of the Hague Convention. See Koehler v. Dodwell, 152 F.3d 304, 307-08 (4th Cir. 1998); IM Partners v. Debit Direct Limited, 394 F. Supp. 2d 503, 512 (D. Conn. 2005); Tax Lease Underwriters, Inc. v. Blackwall Green, Ltd., 106 F.R.D. 595 (E.D. Mo. 1985).

Here, according to Plaintiff's default judgment papers, service of the Complaint and summons was effected by a legal assistant of Crills Advocates, English solicitors located in St. Helier, Jersey, Channel Islands. The legal assistant provided an affidavit of service that she served a receptionist at Cole's place of business (HLB Jackson Fox) and that the receptionist there confirmed that the Complaint and summons would be provided to Cole. Thus, even though Cole was not personally served with process, this Court finds that Cole was properly served.

55(b)(2), Fed. R. Civ. P., to establish that the essential elements of the pleaded claims are present, normally taking the factual allegations in the complaint as true. Comdyne I v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); D.B. v. Bloom, 896 F. Supp. 163, 170 n. 3 (D.N.J. 1995). The court, however, in its discretion may require some proof of facts that must be established to determine liability. See 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 at 60-61. After the Court determines that judgment by default should be entered as to liability, the court must address the quantum of damages or other recovery to be awarded. The court has discretion to convene a damages hearing in order to establish and calculating damages and sufficient documentary evidence to satisfy the court. Bartkus, N.J. Federal Civil Procedure, § 17-3:3.2 at 443 n. 53 (1999). A damages hearing is particularly relevant under Rule 55(b)(2) where there are multiple claimants, issues of proximate causation, or other complexities in ascertaining the degree of damages, as contrasted with the mere fact of damage. See generally Pope v. United States, 323 U.S. 1, 12 (1944).

The Court will deny Plaintiff's motion for default judgment for two reasons. First, the Court notes that Plaintiff's certification lacks any information regarding whether Cole is an infant or incompetent. Second, the Court finds it necessary to have a hearing in order "to determine the amount of damages [and]

to make an investigation of any other matter." Fed. R. Civ. P. 55(b)(2). Such a hearing is necessary for a number of reasons, most prominently because Plaintiff appears to concede in his "Damage Claim" that he is not entirely sure of the proper damages figure, stating "So, what is the figure? Only Cole and his co-conspirators know." In addition, Plaintiff's discussion of the value of certain gold and currency converted from Plaintiff is extremely confusing and the documents submitted in support of the damages claim are unhelpful to this Court's determination of a proper amount of damages. Finally, Court has concerns regarding Plaintiff's claim for $3,340,000 in damages for conversion of his sailboat as the Court, as discussed in Section II.E supra, has questioned whether Plaintiff has any proof of his ownership of the boat. Finally, various of the claims that have been held to be time-barred as against Comer are also likely time-barred against Cole, and Plaintiff must prove that such claims against Cole were filed within the limitations period. Thus, the Court will deny Plaintiff's motion for default judgment as to Cole without prejudice to Plaintiff's right to a hearing on the issues of liability and damages.

## V. CONCLUSION

For the reasons described above, Comer's motion for summary judgment will be granted. The Court finds that summary judgment is appropriate with respect to Plaintiff's legal malpractice

claim because (1) several of the alleged instances of malpractice are time-barred; (2) Plaintiff has failed to provide any evidence that Comer's alleged malpractice was the proximate cause of the harms Plaintiff suffered; and (3) Plaintiff's cannot use alleged violations of the rules of professional conduct as a basis for a claim of legal malpractice. With respect to Plaintiff's claim of conversion of his yacht, the Court holds that this action too is barred by New Jersey's six-year statute of limitation. Third, the Court will grant Comer's motion for summary judgment based on Plaintiff's claim for conversion of his Bahamian real estate because Plaintiff fails to present any evidence either that (1) he owned the property or (2) Comer was involved in its conversion. Fourth, the Court will also dismiss Plaintiff's motion to preclude Plaintiff's expert's testimony as moot. Finally, the Court will deny without prejudice Plaintiff's motion for default judgment with respect to defendant Denys Cole.

The accompanying Order is entered.

**June 28, 2007**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge